**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BAYER HEALTHCARE PHARMACEUTICALS INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**RJ HEALTH SYSTEMS INTERNATIONAL LLC,**<br><br>Defendant. | Civ. No. 15-6952 (KM) (MAH)<br><br>**OPINION** |

**MCNULTY, U.S.D.J.:**

    The plaintiff, Bayer Healthcare Pharmaceuticals Inc. ("Bayer"), brings this action against the defendant, RJ Health Systems International LLC ("RJ Health"). Bayer seeks damages for allegedly misleading information promulgated by RJ Health relating to the reimbursement price for Mirena®, a hormonal intrauterine device ("IUD"). The complaint asserts four causes of action: (I) violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (II) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b(a); (III) tortious interference with business relations; and (IV) negligent misrepresentation.

    The Court denied RJ Health's motion to dismiss Counts I, II, and III of the original complaint. I granted the motion to dismiss Count IV without prejudice to the filing of an amended complaint within 30 days. (ECF nos. 43, 44) Bayer filed an Amended Complaint (ECF no. 47, cited herein as "AC")

    Now before the Court is the motion of Defendant RJ Health to dismiss the Amended Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF no. 54) Bayer has filed papers in opposition (ECF no.61), and RJ

1

Health has filed a reply (ECF no. 64). For the reasons set forth below, the motion to dismiss is denied.

**DISCUSSION**

Familiarity with my prior opinion (ECF no. 43) is assumed. I incorporate by reference background information, the familiar standards governing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and the substantive discussion of the law governing these claims.

### A.    Counts I, II, and III

RJ Health has renewed its denied motion to dismiss Counts I, II, and III. Before mechanically applying the law of the case, I will examine whether the Amended Complaint alters the allegations of Counts I, II, and III. In a proper case, I might find that the allegations are so altered that the defendant is justified in asking the Court to review them afresh. If not, however, a second motion to dismiss might amount to an untimely motion for reconsideration, a contravention of the law of the case, or even a violation of Fed. R. Civ. P. 12(g)(2):

> (2) *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

In comparing the original and amended complaints, I am aided by Bayer's inclusion of a redlined comparison document. (ECF no. 61-2) Without adopting wholesale Bayer's description of the revisions in its brief, I am generally in agreement that the changes fall into four categories:

> (1)    Allegations that payors have actually relied on the alleged misinformation by lowering reimbursement levels for Mirena®. (AC ¶¶ 13, 43-46, 91-93)
>
> (2)    Withdrawal of forward-looking allegations and request for injunctive relief, given the cessation of the alleged activity as of January 1, 2016. (AC ¶¶ 1-2, 6, 8-9, 11, 14-16, 21, 29, 36, 41, 47-54, 61-62, 66, 75, 79, 82, 94).

(3)     Addition of description of HCPCS Workgroup's recommendation to split J7302 into two new codes (post-dating original complaint, but discussed in briefing and opinion on first motion to dismiss) (AC ¶¶ 52-53)

(4)     Refinement of the term "code price" and description of the alleged misrepresentations as arising from the classification of both drugs under the same code. (AC ¶¶ 10, 39, 40, 42)

RJ Health relies heavily on the fourth category in arguing that it is entitled to reboot its arguments in opposition to Counts I, II, and III. I disagree. Although the theory is refined and recast somewhat, my grounds for denying the motion to dismiss are not affected. Now, as before, the gist of the alleged problem is the (former) inclusion of both Mirena® and Liletta® under the same code, J7302. Now, as before, the product-specific WACs are $810.51 and $625. Now, as before, the allegation is that Mirena® was forced to go along for the ride at the lower price. Now, as before, RJ Health contends, *inter alia,* that it was not responsible for CMS's inclusion of Liletta® within the same drug code as the more expensive Mirena®. Now, as before, RJ Health contends that it did not misrepresent the WAC of the two drugs.

RJ Health has much to say in its defense—for example, that any injury resulted, not from any conduct of RJ Health, but from the CMS classifications, which are beyond its control. But now, as before, I find that such contentions raise matters of fact unsuited to resolution on a motion to dismiss, and must await development in discovery. The motion to dismiss Counts I, II, and III of the Amended Complaint is denied.

### B.    Count IV

Count IV, on the other hand, was dismissed, and in response to that dismissal Bayer has substantially reformulated the supporting allegations in its Amended Complaint. Bayer is therefore well within its procedural rights in moving to dismiss this amended version of Count IV.

Negligent misrepresentation, requires "[a]n incorrect statement, negligently made and justifiably relied on, which results in economic loss."

3

*Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (quotations omitted). My prior Opinion dismissed Count IV because it was inadequately pled. At the time, the parties disputed whether Bayer had a cause of action for damage caused to itself by negligent representations made to third parties. I did not reach that issue, because I found that its factual predicate was lacking: "Although the Complaint alleges that payors *would* or *will* only be reimbursed for $625 versus $810.51, there are no allegations of this actually having occurred." (ECF no. 43 at 10) Although I couched the issue in terms of reliance, it could also be considered a failure to allege proximate or but-for causation. No matter; the omission has been remedied in the Amended Complaint. (*See* AC ¶¶ 43–46.)[1]

---

[1]

> 43. As a result of RJ Health's misrepresentations, several health insurers and other payors lowered the reimbursement level they would pay for Mirena to $625. On information and belief, payors that lowered reimbursement for J7302 to $625 include Aetna, Anthem Blue Cross Blue Shield CT, Anthem Blue Cross Blue Shield ME, Anthem Blue Cross Blue Shield NH, Blue Cross Blue Shield Mass, Blue Cross Blue Shield GA (Anthem), Blue Cross Blue Shield NC, Blue Cross Blue Shield RI, Blue Cross Blue Shield SC, CDPHP, Cigna, Connecticare (Emblem), Florida Blue, Harvard Pilgrim, HMSA (BCBC Hawaii), Independence Blue Cross, Medical Mutual, Premera, and Wellmark. Those changes were made between July and October 2015, and they were made in reliance on the misleading "code price" that RJ Health disseminated for J7302 starting on June 1, 2015.
>
> 44. Health care providers who purchased Mirena based on a WAC of $810.51 seeking reimbursement from those payors would only be able to obtain reimbursement based on a code price of $625 even though their actual costs were based on Mirena's WAC of $810.51. In other words, they would lose money each time they prescribed Mirena.
>
> 45. RJ Health knew that under-reimbursement would occur. BHCP warned RJ Health in April and May of 2015. Based on documents obtained from RJ Health in discovery, at least one payor provided a similar warning. On May 19, 2015, a representative from Cigna informed RJ Health that "it would be best to treat [Mirena and Liletta] as separate codes due to the different pricing and different durations." In June 2015, the RJ Health employee responded that RJ Health "did take into account your previous comments about possibly coding Liletta" to a different code, but nonetheless "opted to code them both to J7302." The payor

4

RJ Health now argues that the complaint, as amended, now squarely presents the issue it raised earlier.[2] Reliance by third parties, it says, is insufficient as a matter of law; what is required is reliance by the plaintiff itself, *i.e.,* Bayer. In direct support of that position, RJ Health primarily relies on *Kaufman v. i-Stat Corp.,* 165 N.J. 94, 109, 754 A.2d 1188, 1195 (2000). *See also Karu v. Feldman,* 119 N.J. 135, 147, 574 A.2d 420, 425 (1990).

In *Kaufman,* an investor (and putative class representative) alleged that a corporation had made false statements in financial reports, thereby inflating the price of the shares that she and others had purchased. The issue before the New Jersey Supreme Court was whether the "fraud-on-the-market" theory (as then current in federal securities law)[3] should be imported into a state law action for common law fraud and negligent misrepresentation. Expressing general skepticism about the fraud-on-the-market theory, the New Jersey Supreme Court declined "to deviate from our current standard of proof for the reliance element in a common-law fraud action," 165 N.J. at 97–98, 754 A.2d

---

> replied on June 15, 2015: "wouldn't this cause MD's to lose money if they use Mirena?"
>
> 46. RJ Health also knew that under-reimbursement did in fact occur, based on documents obtained from RJ Health in discovery. For example, a representative from CVS Health /CVS Specialty wrote to RJ Health: "[c]an you please review or escalate this to someone who can answer my question about Mirena. We are getting under paid because of this from our payors."

(AC ¶¶ 43–46)

[2]    This, in contrast to the arguments on Counts I, II, and III, represents RJ Health's first bite at the issue, which I explicitly declined to consider in my earlier opinion.

[3]    The New Jersey Supreme Court cited *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S. Ct. 978 (1988), which permitted plaintiffs to bring securities class actions without proving individual reliance by demonstrating that they purchased securities in the secondary markets at a price that was affected by the issuer's misrepresentations. The fraud-on-the-market rests on an assumption that, in an efficient market, publicly available information will affect the price of a security. The *Basic* presumption of a price impact—essentially, a stand-in for individual reliance—may be rebutted by the defendants at the class certification stage. *See Halliburton Co. v. Erica P. John Fund, Inc.,* __ U.S. __, 134 S. Ct. 2398, 2414–17 (2014).

at 1189, and stated that, as to fraud and negligent misrepresentation, the "element of reliance is the same." *Id.* at 109, 754 A.2d at 1195.

Still, my job here is to predict how the New Jersey Supreme Court would apply the law of negligent misrepresentation to *this* case. *See generally Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 220-21 (3d Cir. 2008); *Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008). The facts and claims in this case are unusual, and I require a factual record to perform that task.

The narrow issue in *Kaufman* was the applicability, or not, of the fraud-on-the-market theory. That Court's analysis was tied to many factors not present here. Among them were federalism-based concerns, efficient-market theories peculiar to securities law, and reluctance to open the floodgates to class actions.[4] To be sure, in reaching its decision, the State Supreme Court rendered a well-developed statement of the law governing the reliance element of negligent misrepresentation. It held that the fraud-on-the-market theory was an insufficient basis to deviate from existing law.

Fraud-on-the-market is not the theory on which Bayer's negligent misrepresentation count is based. The connection between any misrepresentation and the loss to Bayer is not alleged to be general and diffuse, but direct and concrete. It does not depend on a much-criticized economic theory, but on the particular, ascertainable mechanics of a method by which reimbursement rates were determined for Bayer's Mirena® product. There is no on-point case that actually rules out the particular kind of claim made by Bayer here, and new facts may make new law. The negligence tort has always been open to reinterpretation in light of particular situations; it is a law school commonplace negligence has been steadily expanded to take in new classes of foreseeable victims.

---

[4]   Other concerns included the displacement of federal securities law litigation to the state courts; the need for expansion of state law, given the adequacy of federal securities law remedies; the circumvention of the protections of the PSLRA and SLUSA; and above all, the State public policy implications of adopting the fraud-on-the-market theory. *See* 165 N.J. at 105–08, 754 A.2d at 1193–95.

I think that Bayer makes a good faith argument for extension of the existing law of indirect reliance. Bayer has a very steep hill to climb in persuading me to predict that the New Jersey Supreme Court would refine the indirect-reliance theory, which is ordinarily phrased in terms of persons who directly or through an intermediary received the misrepresentation. Still, this case is going forward on Counts I, II, and III, and discovery will look much the same whether or not Count IV remains in the case. I will consider Bayer's argument for indirect reliance in connection with a motion for summary judgment, on a fully developed record.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the Amended Complaint is denied. An appropriate Order follows.

Dated: January 20, 2017

_____
HON. KEVIN MCNULTY, U.S.D.J.